UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JOHNSON,

       Plaintiff,                                    Hon. Gordon J. Quist

v.                                                  Case No. 1:10-CV-978

RICK SHARP et al.,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Grambau's Motion for Summary Judgment. (Dkt. #49). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.

## BACKGROUND

Plaintiff initiated this action on September 27, 2010, against Assistant Deputy Warden Rick Sharp. (Dkt. #1). In his complaint, Plaintiff alleged the following. At approximately 1:45 p.m. on January 15, 2010, the correctional facility in which Plaintiff was then housed conducted a fire drill. Plaintiff exited the building as directed, but was not allowed to first "get his coat and socks." Sharp "knew his actions were causing inmates to suffer because he walked by the yard cages with the MSP canine unit." Plaintiff asked Sharp "for his coat and socks and to be moved to a warmer location."[1] Plaintiff was forced to stand outside in "frigid weather" for 90-120 minutes before being permitted to

---

[1] While not expressly stated in Plaintiff's complaint, his request was presumably denied.

return inside. During this time, Plaintiff's request to use the bathroom was also denied. As a result of this incident, Plaintiff suffered frostbite and hypothermia.

Plaintiff alleged that Sharp's conduct violated the Eighth Amendment proscription against cruel and unusual punishment. Defendant Sharp subsequently moved for summary judgment on the ground that he was not personally involved in the events giving rise to Plaintiff's action. (Dkt. #15). The undersigned recommended that Defendant Sharp's motion for summary judgment be granted and this matter terminated. (Dkt. #25). The Honorable Gordon J. Quist agreed that Defendant Sharp was entitled to summary judgment, but also concluded that Plaintiff was entitled to amend his complaint to assert claims against additional individuals who were allegedly involved in the events giving rise to Plaintiff's claims. (Dkt. #28). In his Amended Complaint, (dkt. #29), Plaintiff asserts the following.

At 1:57 p.m. on January 15, 2010, the correctional facility in which Plaintiff was then housed conducted a fire drill. As Plaintiff exited the building, he asked Defendant Grambau if he "could grab his coat." Grambau denied Plaintiff's request and Plaintiff exited the building as directed. While Plaintiff was standing outside waiting for the fire drill to end, Plaintiff asked Defendant Burmis if he "could use the bathroom." Burmis denied Plaintiff's request. Plaintiff was forced to stand outside until 4:17 p.m., when he and the other prisoners were allowed to return indoors. Plaintiff asserts that Defendants Grambau and Burmis violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendant Grambau now moves for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established

appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed

in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g., the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an

extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

In support of his motion, Defendant Grambau has submitted evidence that Plaintiff filed only one grievance concerning the events in question. (Dkt. #50, Exhibit B). While Plaintiff pursued this grievance through all three steps of the grievance process, the grievance is asserted against Defendant Burmis only and makes no mention of Defendant Grambau. *Id.* Plaintiff does not dispute that he filed only one grievance regarding the incident in question or that the grievance was asserted against Defendant Burmis only. Instead, Plaintiff argues that the exhaustion requirement is "futile, unnecessary, and frivolous." (Dkt. #53 at 2). Any argument that the exhaustion requirement is unnecessary or frivolous is clearly contradicted by the authority discussed above.

As for Plaintiff's allegation that the exhaustion requirement should be waived on futility grounds, such is unpersuasive. Plaintiff has identified no authority supporting the proposition that the PLRA's mandatory exhaustion requirement is subject to a "futility" exception. *See, e.g., Reynolds v. Doe*, 431 Fed. Appx. 221, 222 (4th Cir., May 24, 2011) ("[e]xhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile") (citing *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)). Even if there existed a "futility exception" to the exhaustion requirement, Plaintiff has presented no evidence that any attempt to exhaust his claims against Defendant Grambau would have been futile. Any such argument is belied by the fact that Plaintiff was able to pursue his grievance against Defendant Burmis through all three steps of the grievance process without difficulty.

As previously noted, MDOC policy requires inmates to identify by name "all those involved in the issue being grieved." Plaintiff failed to comply with this requirement vis-a-vis his claim

against Defendant Grambau. Accordingly, the undersigned concludes that Defendant Grambau is entitled to relief.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Grambau's Motion for Summary Judgment</u>, (dkt. #49), be **granted**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 30, 2012         /s/ Ellen S. Carmody
                            ELLEN S. CARMODY
                            United States Magistrate Judge